UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| TERRYL J. SCHWALIER, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 11-cv-126 (RMC) |
| LEON E. PANETTA, *et al.* | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM OPINION**

Brigadier General Terryl J. Schwalier served in the United States Air Force for nearly 30 years. In December 1995, former President William Jefferson Clinton nominated Brigadier General Schwalier for a promotion to major general and the Senate confirmed his nomination. Before Brigadier General Schwalier was promoted, however, President Clinton removed his name from the promotion list. Years later, Brigadier General Schwalier sought his promotion from the Air Force Board for the Correction of Military Records (the "Board"), arguing that the removal of his name from the promotion list was politically motivated and was ineffective because the promotion had occurred by operation of law one month *before* President Clinton removed his name. The Board agreed and recommended that Brigadier General Schwalier's military records be corrected to show him retiring as a Major General (two star) rather than a Brigadier General (one star). Shortly thereafter, the Department of Defense ("DoD") became involved and stated that the Board's decision was legally incorrect and *ultra vires* and that the Air Force could not, therefore, retroactively promote Brigadier General

Schwalier to major general.  Brigadier General Schwalier petitions this Court to find that the DoD's actions were arbitrary and capricious and that the Air Force's decision to correct his military records is final and binding on all officers of the United States.

## I. FACTS

Brigadier General Schwalier reported to King Abdulaziz Airbase in Saudi Arabia in July 1995 to assume command of the 4404th Wing (provisional).  The Wing provided aircraft to enforce the "no-fly zone" then in effect over southern Iraq.  Many of the Wing's personnel lived in Khobar Towers, a large high-rise apartment complex close to the airbase.  On June 25, 1996, Hezbollah detonated a truck bomb at the Khobar Towers near the living quarters of the Wing's Air Force personnel.  The blast from the bomb killed 19 airmen and injured hundreds of others.

More than six months prior to the bombing, on December 2, 1995, President Clinton nominated Brigadier General Schwalier for a promotion to major general.  The Senate confirmed this nomination on March 14, 1996, and Brigadier General Schwalier was scheduled to receive his promotion on either January 1, 1997 or February 1, 1997.[1]  On December 20, 1996, General Thomas Moore, Vice Chief of Staff of the Air Force, called Brigadier General Schwalier at his home to indicate that his promotion would be delayed.  General Moore followed this phone call with a letter to Brigadier General Schwalier on January 28, 1997.  The letter stated that General Moore was recommending that Brigadier General Schwalier's promotion be delayed for up to six months to complete "the investigation of the circumstances surrounding the bombing of

---

[1] The administrative record is unclear, and the parties dispute whether Brigadier General Schwalier was first set to be promoted on January 1, 1997 or February 1, 1997.  The correct date is not necessary for this Opinion.

the Khobar Towers . . . while . . . [Brigadier General Schwalier] . . . [was] Commander, 4404th Wing (Provisional)." Administrative Record ("AR") 117. The Secretary of the Air Force, Sheila Widnall, approved General Moore's recommendation to delay the promotion on February 22, 1997.

A total of four investigations were conducted into the Khobar Towers bombing: one by the House National Security Committee; one by a retired Army general officer appointed by the Secretary of Defense; and two by generals appointed by the Secretary of the Air Force and Vice Chair Secretary of the Air Force. While the two investigations ordered by the Secretary of the Air Force concluded that Brigadier General Schwalier acted reasonably and prudently given what he knew at the time before the bombing, the DoD investigation was unfavorable to him. After the DoD investigation concluded, Secretary of Defense William Cohen determined that Brigadier General Schwalier did not "adequately assess the implication of the possible attack [on Khobar Towers]" and recommended that President Clinton remove Brigadier General Schwalier's name from the major general promotion list. AR 7. On the same day that President Clinton received Secretary Cohen's recommendation, July 31, 1997, the President removed Brigadier General Schwalier's name from the major general promotion list.

When Brigadier General Schwalier learned that the Secretary of Defense planned to recommend that his name be removed from the promotion list, he immediately applied for voluntary retirement. His retirement was effective on September 1, 1997. Nearly six years later, on April 7, 2003, Brigadier General Schwalier filed an application to correct his military records with the Air Force Board for the Correction of Military Records. He argued that his projected promotion date was January 1, 1997 and that, pursuant to 10 U.S.C. § 624(d)(4), the promotion

delay lasted at most six months. Because the promotion delay thereby ended on June 30, 1997, Brigadier General Schwalier argued that he was promoted, by operation of law, no later than July 1, 1997. As a result, according to Brigadier General Schwalier, President Clinton did not remove his name from the promotion list prior to his promotion and that the "removal" was therefore ineffective. The Board agreed and recommended that Brigadier General Schwalier's military records be corrected to reflect that: 1) he was promoted "by operation of law" to the grade of major general effective January 1, 1997, and 2) he applied for and was approved for retirement as a major general on February 1, 2000.

Because the Board's recommendation would "affect an appointment or promotion requiring confirmation by the Senate," the Board forwarded its recommendation to Joe Lineberger, Director, Air Force Review Boards Agency. 32 C.F.R. § 865.4(l)(2). Director Lineberger adopted the Board's recommendation and, on October 6, 2004, directed the Chief of Staff of the Air Force to correct Brigadier General Schwalier's military records. DoD, however, disagreed with the Board's legal analysis and conclusions. In a memorandum dated February 7, 2005,[2] the DoD's Deputy General Counsel advised the Deputy General Counsel of the Air Force that the two Court of Claims cases upon which the Board had relied to find that Brigadier General Schwalier was promoted by operation of law had recently been overturned by the Federal Circuit in *Dysart v. United States*, 369 F. 3d 1303 (Fed. Cir. 2004). AR 267. DoD's Deputy General Counsel asked the Air Force to review *Dysart* and respond in writing.

The Air Force Office of General Counsel responded to the DoD on February 18,

---

[2] The date recorded on the memorandum is February 7, **2006**. AR 267. Both parties agree that the correct date is February 7, **2005**.

2005.  The Air Force distinguished *Dysart* factually from Brigadier General Schwalier's case and opined that Brigadier General Schwalier was promoted to major general before the President removed him from the list and that the Board's decision was therefore correct.  AR 282.  The General Counsel for the DoD, however, remained unconvinced.  In a memorandum dated March 24, 2005, DoD General Counsel William Haynes wrote to the Acting Secretary of the Air Force and stated that no "public act" had occurred to effectuate Brigadier General Schwalier's promotion before President Clinton removed him from the promotion list.  He opined that, in the absence of a public act, Brigadier General Schwalier's promotion was not effective and the Board's recommendation to promote him retroactively was "ultra vires and without legal effect."  AR 271.  In response, Mr. Lineberger, the Director of the Board, advised Brigadier General Schwalier's attorney that "given the DoD General Counsel's role as the final legal authority for the DoD, his determination is binding upon the Air Force.  In view of this and since you are not seeking a correction of records that is within the purview of the [Board], we are not in a position to take further action on your client's request.  This is the final Air force decision on your client's application."  AR 300.

On September 24, 2007, Brigadier General Schwalier submitted a request for reconsideration to the Board.  On November 19, 2007, the Board unanimously recommended that Brigadier General Schwalier's request be granted.  Although the Board expressed concern over DoD's General Counsel effectively overruling its prior decision, it chose not to address whether the DoD or the Secretary of the Air Force had the ultimate authority to correct military records.  Instead, the Board focused on whether a correction was warranted to "remove an injustice."  10

U.S.C. § 1522 (a)(1).³ The Board held that, "after reviewing [Brigadier General Schwalier's] complete original submission to the Board, his current submission, and additional classified material referenced by the applicant . . . we conclude that the decision to remove the applicant's name from the CY 95 Major General promotion list caused an injustice. " AR 136.

In finding that an injustice occurred, the Board was troubled by the disparity between the treatment accorded Brigadier General Schwalier and that accorded to other military leaders who were in command during terrorist attacks in the 1970s, on the United States Marine Corps' barracks in Lebanon, on the USS Cole, and on the Pentagon on 9/11. The Board found it unjust to prevent Brigadier General Schwalier's promotion while no action was taken against other commanders. Moreover, the Board noted that it had additional information that DoD did not know when the latter issued its unfavorable investigative report. The additional evidence suggested that the United States had intelligence regarding a possible attack on the Khobar Towers but failed to relay that intelligence to Brigadier General Schwalier in an actionable form before the attack occurred. The Board "simply [did] not find in any of the voluminous amount of information reviewed . . . evidence of a failure of performance by [Brigadier General Schwalier] warranting the action taken against him." AR 137. Accordingly, the Board again recommended that Brigadier General Schwalier's military records be corrected.

As with the prior recommendation, Mr. Lineberger, Director of the Board, adopted the Board's 2007 recommendation. He then issued a directive to the Chief of Staff, United States Air Force to implement the recommendation. He also published a Special Order

---

³ The Board's prior decision focused on whether it should act to "correct an error," 10 U.S.C. § 1522(a)(1), namely whether Brigadier General Schwalier was, in fact, promoted before President Clinton removed his name from the promotion list.

appointing Brigadier General Schwalier to the grade of major general, effective January 1, 1997. Shortly thereafter, on January 18, 2008, DoD emailed the Defense Finance and Accounting Service instructing the latter to withhold payments to Brigadier General Schwalier based upon the Air Force's correction to his military records.  The Acting General Counsel of DoD also contacted Michael Wynne, Secretary of the Air Force.  Based upon that correspondence, Secretary Wynne instructed Mr. Lineberger to rescind the correction to Brigadier General Schwalier's records.  According to Secretary Wynne, the Acting General Counsel of the DoD, the Department of Justice, and the Secretary of Defense all agreed that the Board's decision was incorrect and that "all actions taken in implementation of [the Board's recommendation] are void."  AR 3.  At Secretary Wynne's direction, Mr. Lineberger, on April 3, 2008, rescinded his December 20, 2007 directive.

Brigadier General Schwalier asks that this Court to hold that the Board's decision to correct his military records is final and conclusive and that DoD and the Secretary of the Air Force acted arbitrarily and capriciously when they overturned Mr. Lineberger's order adopting the Board's recommendation and promoting him to major general.

## II. LEGAL STANDARD

The Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.,* entitles "a person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action . . . to judicial review thereof."  5 U.S.C. § 702.  For a court to have jurisdiction under the APA, the challenged agency action must be final.  *Cobell v. Norton*, 240 F.3d 1081, 1095 (D.C. Cir. 2001).  A final agency action "(1) marks the consummation of the agency's decisionmaking process – it must not be of a merely tentative or interlocutory nature; and (2) the

action must be one by which rights or obligations have been determined or from which legal consequences will flow." *Domestic Secs., Inc. v. SEC*, 333 F.3d 239, 246 (D.C. Cir. 2003) (internal quotation marks omitted). A court therefore must consider "whether the agency's position is definitive and whether it has a direct and immediate effect on the day-to-day business of the parties." *Index. Petroleum Ass'n of Am. v. Babbitt*, 235 F.3d 588, 595-96 (D.C. Cir. 2001).

The APA requires a reviewing court to set aside a final agency action that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A); *Tourus Records, Inc. v. Drug Enforcement Admin.*, 259 F.3d 731, 736 (D.C. Cir. 2001). In making this inquiry, the reviewing court "must consider whether the [agency's] decision was based on a consideration of the relevant factors and whether there has been a clear error of judgment." *Marsh v. Oregon Natural Res. Council*, 490 U.S. 360, 378 (1989) (internal quotation marks omitted). At a minimum, the agency must have considered relevant data and articulated an explanation establishing a "rational connection between the facts found and the choice made." *Bowen v. Am. Hosp. Ass'n*, 476 U.S. 610, 626 (1986); *see also Pub. Citizen, Inc. v. Fed. Aviation Admin.*, 988 F.2d 186, 197 (D.C. Cir. 1993) ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result."). An agency action usually is arbitrary or capricious if

> the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise.

*Motor Vehicle Mfrs. Ass'n of U.S.v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983); *see also County of Los Angeles v. Shalala*, 192 F.3d 1005, 1021 (D.C. Cir. 1999) ("Where the

agency has failed to provide a reasoned explanation, or where the record belies the agency's conclusion, [the court] must undo its action.").

As the Supreme Court has explained, "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency." *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43. Rather, the agency action under review is "entitled to a presumption of regularity." *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 415 (1971), *abrogated on other grounds by Califano v. Sanders*, 430 U.S. 99 (1977). If the district court can "reasonably discern" the agency's path, it should uphold the agency's decision. *Pub. Citizen*, 988 F.2d at 197.

Under the APA, the district court acts as an appellate court and reviews the matter as a question of law. *Rempfer v. Sharfstein*, 583 F.3d 860, 865 (D.C. Cir. 2009). Defendants' have moved to dismiss or, in the alternative, for summary judgment. How the motion is labeled is immaterial because, in an APA action, "the question of whether the agency acted in an arbitrary and capricious manner is a legal one which the district court can resolve on the agency record, regardless of whether it is presented in the context of a motion for judgment on the pleadings or in a motion for summary judgment." *Am. Bioscience, Inc. v. Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001).

### III. ANALYSIS

#### A. Statute of Limitations

28 U.S.C. § 2401(a) provides that, "except as provided by chapter 71 of title 41 [the Contract Disputes Act], every civil action commenced against the United States shall be barred unless the complaint is filed within six years after the right of action first accrues ." The

parties disagree as to when the "right of action first accrue[d]" in this case. Defendants claim that the right of action accrued on September 1, 1997 after Brigadier General Schwalier retired from the Air Force because his name was removed from the promotion list. On this basis, Defendants claim that the Complaint is time barred because the cause of action accrued in 1997 and the Complaint was not filed until 2011. Defendants rely on *Martinez v. United States*, 333 F.3d 1295 (Fed. Cir. 2003) (en banc), in which the Federal Circuit held that a discharged army officer must file a complaint within six years of the date of his discharge and that filing a claim with a military board does not affect this six-year limitation. Defendants ask the Court to adopt the *Martinez* decision and hold that Brigadier General Schwalier's application with the Board does not and cannot reset the six year clock.

Brigadier General Schwalier argues that the statute of limitation for a court action does not begin to run until *after* the Board acted on his application. He argues that he is not contesting his retirement or any adverse personnel action; he is seeking review of DoD's and the Secretary of the Air Force's decisions with respect to his application to correct his military records. He also points out that *Martinez* is the minority opinion and that the Second, Third, Fifth, and Tenth Circuits have all held that the statute of limitations for seeking APA review of a Board action runs from the date of the final Board decision and not the underlying personnel action.[4] Finally, Brigadier General Schwalier relies on *Lebrun v. England*, where a court in this district adopted the majority viewpoint and held that "the right to obtain judicial review of a

---

[4] *Blassingame v. Sec'y of Navy*, 811 F.2d 65, 71 (2d Cir. 1987), *rev'd on other grounds after remand*, 866 F.2d 556 (1989); *Dougherty v. United State Navy Bd. for Corr. of Naval Records*, 784 F.2d 499, 501-02 (3d Cir. 1986); *Smith v. Marsh*, 787 F.2d 510, 512 (10th Cir. 1986); *Geyen v. Marsh*, 775 F.2d 1303, 1306 (5th Cir. 1985).

Board of Corrections' decision under the APA . . . accrues at the time of the final agency decision . . . rather than at the time when the underlying discharge or alleged coerced resignation occurred." 212 F. Supp. 2d 5, 11 (D.D.C. 2002).

This Court is persuaded by the majority view and finds that Brigadier General Schwalier's complaint is not barred by the statute of limitations. In this case, he seeks review of agency actions that occurred in 2004 and 2007. His first claim for relief argues that DoD unlawfully interfered with the Air Force's 2004 decision to correct his military records and that the Air Force acted "arbitrarily, capriciously, and [unlawfully]" when it "acquiesced in DoD's unlawful interference." Compl. ¶¶ 93-94. His second claim for relief is identical except that he complains of DoD's "interference" in 2007 and the Air Force's subsequent acquiescence. *See* Compl. ¶ 99-101. Thus, Schwalier is not directly challenging the failure to promote him or the removal of his name from the promotion list. Although the agency actions necessarily involved the removal of his name from the promotion list, that does not alter when Brigadier General Schwalier's ability to challenge those actions first accrued. 28 U.S.C. § 2401(a); *see, e.g., Lebrun*, 212 F. Supp. 2d at 11-12.

### B. Administrative Procedures Act

#### *i. Military Correction Boards*

Prior to 1946, aggrieved military members were forced to seek private bills in Congress to correct their military records. As part of the Legislative Reorganization Act of 1946, Congress allowed Secretaries of military departments to establish boards to correct military records. *See* Pub. L. No. 79-601, § 207; *Ogen v. Zuckert*, 298 F.2d 312, 315-16 (D.C. Cir. 1961) ("The statute under which the Board was established obviously was intended to take the place of

private bills for relief from error or injustice at the hands of the Armed Services."). 10 U.S.C. §1552 governs the correction of military records and provides that "[t]he Secretary of a military department may correct any military record . . . when the Secretary considers it necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). "[S]uch corrections shall be made by the Secretary [of a military department] acting through boards of civilians . . . ." *Id.* Procedures to correct military records are established by the Secretary of the relevant military department and are "approved by the Secretary of Defense." *Id.* at § 1552(a)(3).

The procedures governing the correction of military records for the Air Force are found at 32 C.F.R. §§ 865 - 865.8. The regulations identify who may apply for a correction of military records and how and where to apply. *Id.* § 865.3. Once the Air Force recieves an application to correct military records, "[a] panel of at least three board members considers each application." *Id.* § 865.4(c). Although the Board "is not an investigative body" it may "in its discretion hold a hearing or call for additional evidence or opinions in any case." *Id.* § 865.2(c). A majority of the panel "constitutes the action of the Board." § 865.4(h). If the Board denies an application or unanimously grants an application that does not affect a promotion requiring Senate confirmation,[5] the Board "acts for the Secretary of the Air Force and its decision is final." *Id.* § 865.4(l)(1) & (2). Otherwise, the Board's recommendation is forwarded to the "Secretary of the Air Force or his or her designee for final decision." *Id.* § 865.4(l)(3).

---

[5] Specifically, the Board acts on behalf of the Secretary of the Air Force when it "[g]rants any application in whole or part when the relief was recommended by the official preparing the advisory opinion, was unanimously agreed to by the panel, and does not affect an appointment or promotion requiring confirmation by the Senate, and does not affect a matter for which the Secretary of the Air Force or his or her delegee has withheld decision authority or required notification before final decision." 32 C.F.R. § 865.4(l)(2).

Once the Secretary (or his designee) receives the Board's recommendation, "[t]he Secretary may direct such action as he or she deems appropriate on each case . . . . If the Secretary does not accept the Board's recommendation, the Secretary's decision will be in writing and will include a brief statement of the grounds for his/her final decision." *Id.* § 865.5(a). Once the Secretary (or his designee) makes a "final decision," either adopting or rejecting the Board's recommendation, "[t]he Executive Director or his/her designee will inform the applicant or counsel, if any, of the final decision on the application." 32 C.F.R. § 865.7. After "final decision" has been made by the Secretary (or his designee) that decision "is final and conclusive on all officers of the United States." 10 U.S.C. § 1552(a)(4).

### ii. Final Agency Action

As an initial matter, the Court must identify the final agency actions subject to review. In his Complaint, Brigadier General Schwalier loosely identifies two actions taken by the DoD and two actions taken by the Department of the Air Force that he argues are subject to review: (1) DoD's "interfer[ence] with and ordering the invalidation of" the Secretary's 2004 and 2007 decisions to correct his records, Compl. ¶¶ 94, 99; and (2) the Air Force's actions (in 2004 and 2008) to "rescind and reverse a final and conclusive correction of Brig Gen Schwalier's promotion," *Id.* ¶¶ 95, 100. The Court will address the DoD and Air Force actions that occurred in early 2008. Brigadier General Schwalier himself points out that he only submitted one application to the Board and that the second submission "was actually a request for reconsideration." Pl.'s Reply at 20 n.3. He also emphasizes that the second submission was acknowledged by the Board as a request for reconsideration, had the same docket number as the initial application, and that the Board's 2007 recommendation was set forth in an addendum to

the record of its prior proceeding. Accordingly, the 2004 actions were not final agency actions and are therefore not subject to APA review. The final agency actions are those the DoD and the Air Force took with respect to the April 3, 2008 decision to rescind the order correcting Brigadier General Schwalier's military records. *See also* Pl.'s Reply at 14 ("the immediate action seeks judicial review of a final, April 3, 2008, decision . . . .")

### a. Department of Defense

Brigadier General Schwalier relies on statute, regulations, and a DoD directive to argue that DoD acted arbitrarily and capriciously and in violation of the law when it interfered with the Secretary of the Air Force's decision to correct his military records. The statute governing the correction of military records states that "[t]he Secretary of a military department may correct any military record of the Secretary's department . . . ." 10 U.S.C. § 1552. Brigadier General Schwalier argues that the Secretary of the Air Force — not the Secretary of Defense — has the discretion to correct Air Force military records. The distinction between the authority of the Secretary of the Air Force and the Secretary of Defense is highlighted in § 1522 when Congress stated that procedures to correct military records shall be "established by the Secretary concerned . . . [and] those procedures must be approved by the Secretary of Defense." 10 U.S.C. § 1552(3). Brigadier General Schwalier argues that according to the plain language of the statute, DoD can review *procedures* involving the correction of military records, but not a substantive *decision* to correct a military record. Thus, DoD's attempt to exercise control over the Air Force's decision to correct Brigadier General Schwalier's military records is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).

While there is certainly appeal to the "plain language" argument, Brigadier General Schwalier ignores the plain language of other statutes that limits the authority of the Secretary of the Air Force. Specifically, in enumerating the responsibilities of the Secretary, Congress has expressly stated that the Secretary of the Air Force acts "[s]ubject to the authority, direction, and control of the Secretary of Defense . . . ." 10 U.S.C. § 8013; *see also id.* § 8011 ("The Department of the Air Force is separately organized under the Secretary of the Air Force. It operates under the authority, direction, and control of the Secretary of Defense."). Moreover, Congress has specifically designated DoD General Counsel as "the chief legal officer of the Department of Defense" who "shall perform such functions as the Secretary of Defense may prescribe." 10 U.S.C. § 140(b). As relevant here, the Secretary of Defense has prescribed that the General Counsel "[p]rovide advice to the . . . Secretary of Defense regarding all legal matters . . . within . . . the Department of Defense" and "determine the DoD position on specific legal problems, and resolve disagreements within the DoD on such matters." Department of Defense Directive 5145.01 §§ 3.1 & 3.10 (May 2, 2001).

Accordingly, while the Secretary of the Air Force "may correct any military record," 10 U.S.C. § 1552(a), he does so "subject to the authority, direction and control of the Secretary of Defense." 10 U.S.C. § 8013. And, when there is a "disagreement[] within the Department of Defense[6] on a legal matter," the Department of General Counsel is not only *permitted* to resolve that disagreement, he is *obligated* to. DoD General Counsel did not violate 10 U.S.C. § 1522 by criticizing the legal conclusions of the Board and eventually exercising

---

[6] The Department of the Air Force is a sub-component of the Department of Defense. 10 U.S.C. § 111(a)(8). Thus, a disagreement over a legal matter between Air Force attorneys and DoD attorneys is a "disagreement within the Department of Defense."

"direction and control" over the Secretary of the Air Force's decision to correct Brigadier General Schwalier's military records.

Brigadier General Schwalier's reliance on the regulations governing the procedures for correcting military records and a DoD directive fails for the same reasons. Brigadier General Schwalier is correct that the regulations, like the statute, give the Secretary of a military department the ability to correct military records and that there is no provision allowing review of the Secretary's decision by DoD. *See* 32 C.F.R. §§ 865-865.8. Likewise, Department of Defense Directive 1332.41provides that "The Secretaries of the Military Departments have the authority for final decision and the responsibility for the operation of their respective [Boards for the Correction of Military Records] . . . ." Department of Defense Directive 1332.41 § 4.2 (March 8, 2004) (emphasis in original). However, because the Secretary of the Air Force acts under the authority of and subject to the "direction [and] control" of the Secretary of Defense and because the DoD General Counsel is the "chief legal officer" charged with resolving legal disputes within the Department, the DoD did not violate the law or abuse its discretion when it got involved in Brigadier General Schwalier's application process and resolved a legal disagreement between the Air Force and the DoD.

Stating that DoD *can* get involved in the process to correct military records, does not, however, answer the question of whether, in getting involved, the DoD acted arbitrarily or capriciously. In this case, that question is easy to answer. DoD repeatedly expressed concern that the Board was acting beyond its authority; that it was overruling a non-delegable presidential act (the removal of Brigadier General's name from the promotion list by President Clinton); that the cases on which the Board relied were overturned by *Dysart*; that the "reconsideration" of

Brigadier General Schwalier's application involved the same legal issues and therefore should have had the same result as his first application; and that the record was devoid of any public act that would effectuate Brigadier General Schwalier's promotion under *Marbury v. Madison*, 5 U.S. 137 (1803). Even Brigadier General Schwalier appears to concede that DoD and the Air Force had "two reasonable, but conflicting interpretations of case law." Reply at 11. Given that DoD had a "reasonable" basis for believing that the Board's legal analysis was wrong and that the Board's actions were *ultra vires*, and given that "the scope of review under the 'arbitrary and capricious' standard is narrow and a court is not to substitute its judgment for that of the agency," *Motor Vehicle Mfrs. Ass'n*, 463 U.S. at 43, the Court finds that DoD did not act arbitrarily or capriciously in directing the Secretary of the Air Force to rescind its decision to correct Brigadier General Schwalier's military records.

### b.  Department of the Air Force

For similar reasons, the Secretary of the Air Force did not act arbitrarily or capriciously in "acquiesc[ing]" to DoD. Compl. ¶¶ 99, 100. As already stated, the Secretary of the Air Force acts under the "direction and control" of the Secretary of Defense, and the latter has specifically charged the DoD General Counsel with resolving legal disputes within the Department. Thus, when the DoD General Counsel told the Secretary of the Air Force that Brigadier General Schwalier's application should be denied and that the Secretary of Defense agreed, the Secretary of the Air Force acted reasonably.

Brigadier General Schwalier, however, contends that the Secretary of the Air Force was not permitted to acquiesce. He claims that once a favorable decision was made by the Secretary of the Air Force, that decision was "final and conclusive on all officers of the United

States," including the Secretary of the Air Force himself. 10 U.S.C. § 1552(a)(4). Thus, according to Brigadier General Schwalier, the Secretary of the Air Force could not rescind its earlier decision correcting his military records. This interpretation of the statute is problematic for at least two reasons. First, the decision to correct a military record becomes "binding upon all officers of the United States," *id.*, only when it is the "*final* decision" of the Secretary. 26 C.F.R. § 865.4(l)(3) (emphasis added). The *final* decision the Secretary of the Air Force made in this case was to rescind the correction. Therefore it is this recision that is "binding upon all officers," not the original decision to correct Brigadier General Schwalier's records. Second, although Brigadier General Schwalier contends that "no regulatory provision allows [the Secretary of the Air Force] or a lawful designee to issue a final decision and later rescind and reverse it for any reason," Pl.'s Mot. Summ. J. at 24, the reverse is also true — there is no provision *prohibiting* the Secretary from doing so. The Court refuses to hold that a Secretary of a military department can never — no matter the reason or circumstance — rescind a military records correction decision made him or by his designee. The regulations provide that, with respect to applications to correct military records, "[t]he Secretary may direct such action as he or she deems appropriate on each case . . . ." " *Id.* § 865.5(a) The Secretary's ability to act "as he or she deems appropriate on each case" includes the ability to rescind a designee's prior action.

## IV.  CONCLUSION

Although the Air Force considers the treatment of Brigadier General Schwalier to have been unjust and believes that his records should be corrected to grant his promotion to major general, DoD has determined that the Air Force lacked legal authority to promote Brigadier General Schwalier after his name was removed from the promotion list by the

President of the United States.  DoD did not act arbitrarily or capriciously in making this decision, and the Air Force did not act arbitrarily or capriciously in accepting it.  Accordingly, Defendants' motion for summary judgment will be granted, and Brigadier General Schwalier's cross motion for summary judgment will be denied.  A memoralizing Order accompanies this Memorandom Opinion.

Date: March 14, 2012                                                   /s/
                                                                    ROSEMARY M. COLLYER
                                                                    United States District Judge